1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES  DISTRICT COURT**

Northern District of California

IO GROUP, INC,

                      Plaintiff,

      v.

JASON JORDON,

                Defendant.

_____/

No. C 09-0884 MEJ

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. #57)**

### I.  INTRODUCTION

Pending before the Court is Plaintiff IO Group, Inc.'s ("Plaintiff") Motion for Default Judgment, filed February 18, 2010.  (Dkt. #57.)  Defendant Jason Jordon ("Defendant") has not filed an opposition or otherwise appeared in this matter since the parties filed a joint status report on December 17, 2009.  After consideration of the parties' papers, relevant legal authority, and good cause appearing, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion as set forth below.

### II.  BACKGROUND

Plaintiff is a California corporation doing business as "Titan Media," with its principal place of business located in San Francisco, California.  (Compl. ¶ 2, Dkt #1.)  Titan Media produces, markets, and distributes adult entertainment products, including Internet website content, videos, DVDs, and photographs.  *Id.*  Plaintiff operates and maintains a website by and through which its photographic and audiovisual works can be viewed by individuals who pay a monthly subscription fee.  *Id.*  Prior to distribution, each of Plaintiff's audiovisual works is marked with Plaintiff's trademark, a copyright notice, and a warning that unauthorized copying is illegal and will be prosecuted.  *Id.* ¶10.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

Defendant owns and operates an Internet website with the domain name nubian101.com. *Id.* ¶3.  By and through nubian101.com, Defendant engages in the large scale reproduction, distribution and public display of copyrighted works including works owned by and registered to Plaintiff. *Id.* Although Defendant does not charge users to view, copy or download the photographs and moving pictures he makes available by and through nubian101.com, the site is a commercial venture as Defendant earned revenue from advertisements that appeared on the site.  (Ruoff Decl. ¶4, Dkt. #58.)  At various times, during regular inspection of Internet websites, Plaintiff's employees discovered and documented a number of Plaintiff's copyrighted works being publicly displayed and distributed by and through nubian101.com. *Id.* ¶12.  Defendant knew that the work belonged to Plaintiff and was likely subject to copyright, and that he did not have permission to exploit its work. *Id.* ¶¶20-21.

On February 27, 2009, Plaintiff filed the above-captioned matter against Defendant for copyright infringement under the Federal Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*  (Dkt. #1.)  In its Complaint, Plaintiff alleges that Defendant engaged in the reproduction, distribution and public display of Plaintiff's copyrighted works without its permission. *Id.* ¶3.  Plaintiff also alleges that Defendant is liable as a contributory infringer because he induced, caused, and materially contributed to the infringing acts of others by establishing and operating the location of the infringing activity, while having knowledge of the infringing acts. *Id.* ¶¶30-36.  Additionally, Plaintiff alleges that Defendant is vicariously liable for these acts of infringement because he had the right and ability to control the infringing activity, and he obtained a direct financial benefit from the infringing activity. *Id.* ¶¶37-43.  Through these acts, Plaintiff alleges that Defendant solicits, transacts, and is doing business within the State of California, and therefore causing injury in California. *Id.* ¶5.

On May 8, 2009, after Defendant failed to respond to the Complaint, the Clerk of Court entered default against him.  (Dkt. #7.)  Thereafter, Plaintiff filed a motion for default judgment on July 7, 2009.  (Dkt. #11.)  Although Defendant did not file an opposition to Plaintiff's motion, on the day of the September 16, 2009 hearing, he contacted the Court and made a telephonic appearance.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   (Dkt. #30.)  During the hearing, Defendant argued that he had not been served with the summons

2   and complaint and that he wished to oppose the motion.  *Id.*  Accordingly, the Court permitted

3   Defendant the opportunity to file a motion to set aside default.  *Id.*

4           On October 16, 2009, Defendant filed his motion to set aside default.  (Dkt. #32.)  Although

5   Defendant did not appear at the hearing on his motion, the Court set aside default on November 25,

6   2009.  (Dkt. #40.)  However, because documents sent to Defendant at the address he provided had

7   been returned as undeliverable, the Court advised him that the address he provided to the Court was

8   the only address that the Court would use to communicate with him and that it was his responsibility

9   to make sure it was accurate.  *Id.*

10          Also on October 16, Defendant filed a "Responsive Pleading" in which he did not deny the

11  alleged infringement, but stated that his website, nubian101.com, has members that upload photos

12  and videos without any screening by the site, and that he immediately removed Plaintiff's images

13  when Plaintiff requested that he do so.  (Dkt. #33.)  Defendant stated that nubian101.com caters to a

14  "black adult gay" community and promotes "safe-sex, self love and positive lifestyles."  *Id.*  In his

15  statement, Defendant states that he attempted to work with Plaintiff, but it wanted him to admit that

16  he maliciously uploaded its movies, which he denies doing, and he believes Plaintiff's motivation is

17  somehow racially motivated.  *Id.*

18          On December 17, 2009, the parties filed a Joint Status Report.  (Dkt. #45.)  Although the

19  Court subsequently scheduled a case management conference, (Dkt. #46), Plaintiff failed to

20  participate in the filing of a further case management statement, and he has made no further

21  appearances since the parties filed their December 17 status report.  As a result of this failure, the

22  Court issued an order for Defendant to show cause why his default should not be re-entered for

23  failure to defend himself in this action and failure to comply with court rules and deadlines.  (Dkt.

24  #51.)  The Court ordered him to file a declaration by January 28, 2010, and scheduled a hearing on

25  February 4, 2010.  *Id.*

26          On February 4, 2010, the Court held a hearing on the matter.  Defendant did not appear at the

27  hearing and did not file a declaration in response to the January 14, 2010 order to show cause.

28

1    Accordingly, the Court ordered the Clerk of Court to re-enter default against Defendant and ordered

2    Plaintiff to file a motion for default judgment against him.  (Dkt. #54.)

3           On February 18, 2010, Plaintiff filed the present Motion for Default Judgment.  (Dkt. #57.)

4    Defendant failed to file an opposition and failed to appear at the April 15, 2010 hearing the Court

5    held on the matter.

6                                        **III.  DISCUSSION**

7    **A.     Legal Standard**

8           Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to

9    enter default judgment in a case.  "The district court's decision whether to enter default judgment is

10   a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  To assist courts in

11   determining whether default judgment in appropriate, the Ninth Circuit has enumerated the

12   following factors for the court to consider: (1) the possibility of prejudice to the plaintiff; (2) the

13   merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at

14   stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was

15   due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure

16   favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

17          Upon entry of default, all factual allegations within the complaint are accepted as true,

18   except those allegations relating to the amount of damages.  *Televideo Sys., Inc. v. Heidenthal*, 826

19   F.2d 915, 917-18 (9th Cir. 1987).  Where a default judgment is granted, the scope of relief is limited

20   by Federal Rule of Civil Procedure 54(c): "A default judgment must not differ in kind from, or

21   exceed in amount, what is demanded in the pleadings."

22   **B.     Jurisdiction**

23          When entry of judgment is sought against a party who has failed to plead or otherwise

24   defend, a district court has an affirmative duty to look into its jurisdiction over both the subject

25   matter and the parties.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  The Court will therefore assess

26   whether it has subject matter jurisdiction over this action, whether personal jurisdiction exists over

27   the parties, and whether Plaintiff effected proper service of process.

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    ///

2            1.      Subject Matter Jurisdiction

3            District courts have original jurisdiction to hear civil cases arising under the Constitution,

4    laws or treaties of the United States.  28 U.S.C. § 1331.  As indicated above, Plaintiff has asserted

5    claims arising under the Federal Copyright Act.  Thus, the Court may properly exercise federal

6    question jurisdiction over this matter pursuant to § 1331.

7            2.      Personal Jurisdiction

8            Next, the Court must assess whether Defendant is subject to the personal jurisdiction of this

9    Court.  As the party seeking to invoke this Court's jurisdiction, Plaintiff bears the burden of

10   establishing that this Court has personal jurisdiction over Defendant.  *Scott v. Breeland*, 792 F.2d

11   925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir.

12   1977)).  In the context of a motion for default judgment, the Court may dismiss an action *sua sponte*

13   for lack of personal jurisdiction.  *In re Tuli*, 172 F.3d at 712.  Where there are questions about the

14   existence of personal jurisdiction, however, a court should allow the plaintiff the opportunity to

15   establish that jurisdiction is proper.  *Id*. at 713.  Here, Plaintiff contends that the Court has personal

16   jurisdiction over Defendant because he solicits, transacts, and does business within California.[1]

17           "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long

18   arm-statute permits the assertion of jurisdiction without violating federal due process."

19   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).  Because

20   California's long arm statute is co-extensive with federal due process requirements, the jurisdictional

21   analyses under California law and federal due process are the same.  *Id.* at 801.  Therefore, absent

22   traditional bases for personal jurisdiction (*i.e.*, physical presence, domicile, and consent), the Due

23   Process Clause requires that nonresident defendants have certain "minimum contacts" with the

24   forum state, "such that the exercise of personal jurisdiction does not offend traditional notions of fair

25   play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316  (1945).

26   _____

27           [1]In his October 16, 2009 Responsive Pleading, Defendant states that he lives in Atlanta,
     Georgia.  (Dkt. #33 2:3-4.)

28

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    The Ninth Circuit has articulated a three-prong test to determine whether a party has

2    sufficient minimum contacts to be susceptible to specific personal jurisdiction:

3    (1) The non-resident defendant must purposefully direct his activities or consummate some

4    transaction in the forum or resident thereof; or perform some act by which he purposefully avails

5    himself of the privilege of conducting activities in the forum, thereby invoking the benefits and

6    protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's

7    forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and

8    substantial justice, *i.e.*, it must be reasonable. *Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v.*

9    *Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).

10   The first prong is satisfied by either purposeful availment or purposeful direction, which are

11   "two distinct concepts." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "A

12   purposeful availment analysis is most often used in suits sounding in contract. A purposeful

13   direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*,

14   374 F.3d at 802. In this matter, Plaintiff asserts claims for copyright infringement. Copyright

15   infringement is generally characterized as a tort. *Brayton Purcell LLP v. Recordon & Recordon*,

16   361 F.Supp.2d 1135, 1140 (N.D. Cal. 2005). Accordingly, purposeful direction is the proper

17   analytical framework in this action.

18           a.       *Purposeful Direction*

19   To evaluate purposeful direction, the Court applies a three-part "*Calder*-effects" test,

20   articulated in the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). Under this test,

21   "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the

22   forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

23   *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)

24   (internal quotes omitted). There is no requirement that the defendant have any physical contacts

25   with the forum. *Schwarzenegger*, 374 F.3d at 803.

26   Here, based on the allegations in Plaintiff's Complaint, the Court finds that Defendant

27   intentionally copied, distributed and publicly displayed Plaintiff's audiovisual works and

28

6

1   photographs without permission.  The Court further finds that his actions were expressly aimed at

2   California because Defendant knew that Plaintiff maintains its principal place of business in

3   California.  Finally, the Court finds that, because Defendant knew Plaintiff was headquartered in San

4   Francisco and that it would suffer the brunt of the harm from Defendant's actions there, including

5   the loss of reputation and goodwill, Defendant's actions had foreseeable effects in this forum.

6   Additionally, the Ninth Circuit has recognized that purposeful availment is satisfied in a copyright

7   action where a defendant willfully infringes copyrights that the defendant knows are owned by a

8   forum resident.  *See Columbia Pictures Tel. v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284,

9   289 (9th Cir. 1997) *rev'd on other grounds by Feltner v. Columbia Pictures Tel., Inc.*, 523 U.S. 340

10  (1998); *see also IO Group, Inc. v. Pivotal, Inc.*, No. C 03-5286 MHP, 2004 WL 838164, at *5 (N.D.

11  Cal. Apr. 19, 2004).  Taking these facts into consideration, the undersigned finds that Plaintiff has

12  sufficiently shown that Defendant purposefully directed his conduct at California.

13              *b.      Forum Related Activities*

14              The second prong of the specific jurisdiction analysis requires that the plaintiff's claims arise

15  from the defendant's forum-related activities.  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316,

16  1322 (9th Cir. 1998).  The requirement is satisfied if the plaintiff would not have been injured "but

17  for" the defendant's forum-related conduct.  *Id.*; *Meyers v. Bennett Law Offices*, 238 F.3d 1068,

18  1075 (9th Cir. 2000).  Plaintiff contends that its claims would not have arisen absent Defendant's

19  actions targeted at it.  Thus, the Court finds that Plaintiff has satisfied this factor.

20              *c.      Reasonableness*

21              The final prong assesses the reasonableness of exercising jurisdiction over the defendant.

22  "Even if the first two requirements are met, in order to satisfy the Due Process Clause, the exercise

23  of personal jurisdiction must be reasonable."  *Panavision Int'l L.P.*, 141 F.3d at 1322 (citing *Ziegler

24  v. Indian River County*, 64 F.3d 470, 474-75 (9th Cir. 1995)).  For jurisdiction to be reasonable, it

25  must comport with "fair play and substantial justice."  *Burger King Corp. v. Rudzewicz*, 471 U.S.

26  462, 476 (1985).  "[W]here a defendant who purposefully has directed his activities at forum

27  residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some

28

UNITED STATES DISTRICT COURT
For the Northern District of California

7

other considerations would render jurisdiction unreasonable." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993) (citing *Burger King*, 471 U.S. at 476-77).

To determine whether a defendant has overcome this inference, the Court considers: (1) the extent of defendant's purposeful interjection; (2) the burden on defendant in defending in the forum; (3) the extent of conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the suit; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See Core-Vent Corp.*, 11 F.3d at 1487-88. In engaging in this analysis, the Court balances each of the factors; no one factor is dispositive. *Id.* at 1488.

With respect to the first factor, Plaintiff has shown that Defendant had intentional and continuous contact with California. Specifically, Plaintiff has alleged that Defendant repeatedly copied, displayed, and distributed its copyrighted works.

As to the second factor, there is nothing in the record or that the Court can see indicating that it would be inconvenient for Defendant to litigate this lawsuit in California. Indeed, the Court has given Defendant every opportunity to appear in this matter, including telephonic appearances, and readily excused his failure to appear at early hearings in this case. He has never been required to appear before the Court in person. It was only after Defendant repeatedly failed to make appearances and respond to orders that the Court re-entered his default. Accordingly, the Court finds that this factor does not weigh in Defendant's favor.

Looking at the third factor, Plaintiff's claims arise under federal law. Thus, there is no potential conflict with another state's laws or regulations. Thus, this factor weighs in favor of Plaintiff.

Turning to the fourth factor, Plaintiff is headquartered in California. California courts, including this Court, have a strong interest in protecting California citizens and domestic businesses from the wrongful acts of nonresident defendants. *Figi Graphics, Inc. v. Dollar Gen. Corp.*, 33 F. Supp. 2d 1263, 1268 (S.D. Cal. 1998) (recognizing that California has a valid interest in protecting a California company from copyright infringement). Accordingly, this factor weighs in Plaintiff's

8

UNITED STATES DISTRICT COURT
For the Northern District of California

1    favor.

2          As to the fifth factor, because Plaintiff operates out of San Francisco, its relevant evidence

3    and witnesses are likely based here.  At the same time, because Defendant does not reside or operate

4    in California, his evidence and witnesses would likely be located outside of this forum.  Thus, this

5    factor is neutral.

6          With respect to the sixth factor, while it may not be as convenient for Plaintiff to litigate this

7    matter outside of California, there is nothing in the record suggesting that convenient and effective

8    relief is not available in a different forum.  Thus, this factor is neutral.

9          Evaluating the final factor, which analyzes whether an alternative forum for the litigation

10   exists, the Court finds that this factor is neutral for the same reasons stated in the fifth and sixth

11   factors.

12         Taking the foregoing factors into consideration, the undersigned finds that, on balance, they

13   militate in favor of a finding that exercise of personal jurisdiction over Defendant in this action is

14   reasonable.

15         In sum, based on the foregoing analysis, the undersigned finds that Plaintiff has sufficiently

16   established that the Court may properly exercise specific jurisdiction over Defendant in this action.

17         3.      Service of Process

18         Next, the Court must assess whether Plaintiff effected proper service of process on

19   Defendant.  Under Federal Rule of Civil Procedure 4(e)(2), an individual may be properly served by

20   delivering a copy of the summons and complaint to the individual personally.  Here, although

21   Defendant raised the issue of proper service at the time he appeared at the hearing on Plaintiff's

22   original default judgment motion, (Dkt. #30), Plaintiff subsequently re-served Defendant and he

23   appeared in the case without disputing service of process.  (Dkt. ##38, 40, 42.)  Thus, there being no

24   cause to find otherwise, the Court finds that service upon Defendant was proper.

25   **C.    Application of the *Eitel* Factors to the Case at Bar**

26         The undersigned next turns to application of the seven *Eitel* factors to determine whether

27   entry of default judgment is appropriate in this matter.  As indicated above, in making this

28

9

assessment, the Court considers: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

### 1.   Prejudice

Under the first *Eitel* factor, the Court must examine whether Plaintiff will be prejudiced if the Court denies its request for entry of default judgment. *Id*. at 1471-72.  Here, Plaintiff would be without recourse to stop Defendant's infringement or to recover for the harm and damages Defendant has caused.  Further, despite every opportunity to do so, Defendant has not participated in this litigation.  Accordingly, this factor weighs in favor of default of judgment.

### 2.   Sufficiency of the Complaint and Likelihood of Success on the Merits

The second and third *Eitel* factors focus on the merits of Plaintiff's substantive claims and the sufficiency of its Complaint. *Eitel*, 782 F.2d at 1471-72.  Together, these factors require that Plaintiff assert claims upon which it may recover. *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).   The undersigned therefore turns to each of Plaintiff's four claims.

### a.   Copyright Infringement

Plaintiff's first claim against Defendant is for copyright infringement under the Federal Copyright Act, 17 U.S.C. §§ 101 *et seq*.  To prevail on a claim for copyright infringement, Plaintiff must prove: (1) ownership of a valid copyright and; (2) that Defendant copied protected elements of the copyrighted work. *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).  In its Complaint, Plaintiff sufficiently alleged both components of this claim.  First, Plaintiff has alleged that it owns registered copyrights in its photographic and audiovisual works.  (Compl., Dkt. #1, ¶¶14-16.) Second, Plaintiff alleged that Defendant reproduced, distributed and publicly displayed by and through nubian101.com Plaintiff's copyrighted work. *Id.* at ¶17.  Plaintiff asserts that these acts of access and copying were and are unauthorized. *Id.* at ¶18.  Taking Plaintiff's allegations as true, the

UNITED STATES DISTRICT COURT
For the Northern District of California

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   undersigned finds that it has adequately pled a claim for copyright infringement.

2            b.      *Contributory Copyright Infringement*

3            Plaintiff's second claim is for contributory copyright infringement.  A defendant is

4   contributorily liable for copyright infringement if the defendant knowingly induces, causes, or

5   materially contributes to the infringing conduct of another.  *Ellison v. Robertson*, 357 F.3d 1072,

6   1076 (9th Cir. 2004) (internal citation omitted).  In its Complaint, Plaintiff sufficiently alleges the

7   components of this claim.  First, Plaintiff alleges that Defendant invites registered members of

8   nubian101.com to supply him and the website with audiovisual files, which he then reproduces,

9   distributes and publicly displays by and through the website.  (Compl. ¶31, Dkt. #1.)  Plaintiff

10  further alleges that registered members of nubian101.com, without Plaintiff's authorization,

11  reproduced, distributed and publicly displayed by and through nubian101.com at least 24 of

12  Plaintiff's photographs and at least five video files with material belonging to it.  *Id.* at ¶32.

13  Defendant himself stated that his members can upload images and videos "immediately," without

14  screening for potential infringement.  (Responsive Pleading, 1:22-23, Dkt. #33.)  Thus, Plaintiff has

15  demonstrated that Defendant, as the owner and operator of nubian101.com, knew or had reason to

16  know of the infringing activity on his website.

17           Second, Plaintiff has established that Defendant materially contributed to nubian101.com

18  members' infringement.  Plaintiff alleges that Defendant, as the creator, owner and operator of

19  nubian101.com, materially contributed to the infringing acts of his members by encouraging,

20  inducing, allowing, and assisting them to reproduce, distribute and display Plaintiff's works.

21  (Compl., ¶34, Dkt. #1.)  Further, in his responsive pleading, Defendant admits that he failed to

22  properly screen the images uploaded by members.  Specifically, Defendant states as follows: "All

23  members uploads are initially screened until they are deemed safe uploaders.  At that point their

24  uploads show immediately."  (Responsive Pleading, 1:22-23, Dkt. #33.)  "Providing a service that

25  allows for the automatic distribution of . . . both infringing and noninfringing [works] can constitute

26  a material contribution when the . . . provider knows or should know of infringing activity on its

27  system yet continues to aid in the accomplishment of the direct infringer's purpose of publicly

28

11

distributing the postings." *Ellison*, 357 F.3d at 1078 (internal quotations and citation omitted).

Based on Plaintiff's allegations and Defendant's own responsive pleading, the Court finds that Plaintiff has adequately pled a claim for contributory copyright infringement. Further, taking these allegations as true, Plaintiff has demonstrated it is likely to succeed on this claim.

> c.   *Vicarious Copyright Infringement*

Plaintiff's third claim is for vicarious copyright infringement. A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from another's infringing activity and "has the right and ability to supervise" the infringing activity. *Ellison*, 357 F.3d at 1076 (internal citation omitted). Here, Plaintiff alleges that Defendant, as owner, creator and operator of nubian101.com, has the right and ability to control the infringing acts of individuals who directly infringed Plaintiff's works. (Compl. ¶ 38, Dkt. #1.) Plaintiff also alleges that each act of infringement of its works served to draw new visitors to nubian101.com. "Financial benefit exists where the availability of infringing material acts as a draw for customers." *Ellison*, 357 F.3d at 1078 (internal quotations and citation omitted). Plaintiff further alleges that Defendant earned revenue by selling advertising on nubian101.com directly next to the locations on the site displaying Plaintiff's infringed works. *Id.* at ¶40. Accordingly, the Court finds that Plaintiff has established that Defendant received a direct financial benefit from providing access to Plaintiff's infringing material.

> d.   *Inducement of Copyright Infringement*

Plaintiff's final claim is for inducement of copyright infringement. However, the Court finds that this is not a separate cause of action but is more properly considered a species of contributory infringement. As the Supreme Court has observed, "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). In *Grokster*, the Court discussed an "inducement rule," finding that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Id.* at 936-37. In light of this discussion, several courts have

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1  expressed doubt as to whether inducement of infringement states a separate claim for relief, or rather

2  whether it is a species of contributory infringement.  *See, e.g., Capitol Records, Inc. v. MP3tunes,*

3  *LLC,* 2009 WL 3364036, at *4 (S.D.N.Y. 2009); *Arista Records LLC v. Usenet.com,* 2009 WL

4  1873589, at *18 n. 17 (S.D.N.Y. 2009). Given that *Grokster* explicitly states that "one infringes

5  contributorily by intentionally inducing" infringement, this Court cannot find that inducement to

6  infringe is a separate claim from contributory infringement.

7         3.    <u>The Sum of Money at Stake in the Action</u>

8        The fourth *Eitel* factor addresses the amount of money at stake in relation to the seriousness

9  of a defendant's conduct.  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal.

10  2002).  Here, in addition to injunctive relief, Plaintiff seeks significant monetary damages.  In light

11  of Defendant's infringing conduct, which he has not denied, and his refusal to participate in this

12  litigation, the Court finds that monetary damages are appropriate.  And, as will be discussed below,

13  the Court has discretion in determining the amount of any damages award, thus ensuring that the

14  award corresponds to Plaintiff's actual injuries based on Defendant's infringement.  Accordingly,

15  the undersigned finds this factor favors entry of default judgment.

16         4.    <u>Possibility of Dispute Concerning Material Facts</u>

17        The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the

18  material facts surrounding the case.  *Eitel*, 782 F.2d at 1471-72.  Here, Plaintiff has set forth

19  adequate allegations detailing Defendant's infringement.  Further, although Defendant has appeared

20  in this action and filed three documents, (Dkt. ##32, 33, 42), he has failed to present any evidence

21  that contradicts the fact that his website, nubian101.com, reproduced, distributed and publicly

22  displayed Plaintiff's copyrighted works.  Therefore, this factor weighs in favor of entry of default

23  judgment.

24         5.    <u>Possibility of Excusable Negligence</u>

25        The sixth *Eitel* factor examines whether Defendant's failure to respond to Plaintiff's

26  allegations was the result of excusable neglect.  *Id*. at 1472.  Here, the Court has given Defendant

27  ample opportunity to defend himself in this action.  On May 5, 2009, the Clerk of Court entered

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  default against Defendant for the first time, (Dkt. #7), but the Court later set aside Defendant's

2  default on November 25, 2009 based on his subsequent appearance in the case and intention to

3  defend himself.  (Dkt. #40.)  However, the Court warned Defendant that a further default would be

4  entered should he not properly defend this action.  (Dkt. #40 at 1:24-25.)  The parties then filed a

5  Joint Case Management Statement, (Dkt. #42), but court notices sent to Defendant were returned as

6  undeliverable.  (Dkt. ##48, 49.)  Plaintiff subsequently filed a Separate Case Management Statement

7  on January 14, 2010, in which it stated that Defendant was not reachable at the address or telephone

8  number he provided the Court and that, although he was intermittently reachable via electronic mail,

9  Defendant was not responding to Plaintiff's case-related inquiries.  (Dkt. #50.)  Based on this

10  inaction, the Court ordered Defendant to show cause why his default should not be re-entered for

11  failure to defend himself in this action and for failure to comply with court rules and deadlines.

12  (Dkt. #51.)  Defendant failed to respond to the order to show cause.  Accordingly, the Court ordered

13  the Clerk of Court to re-enter Defendant's default and ordered Plaintiff to file the present motion for

14  default judgment.  Thus, it is unlikely that Defendant's failure to appear and litigate this matter was

15  based on excusable neglect.  Therefore, this factor favors entry of default judgment.

16        6.    <u>Policy for Deciding on the Merits</u>

17        The last *Eitel* factor examines whether the policy of deciding a case based on the merits

18  precludes entry of default judgment.  *Id.*  In *Eitel*, the Ninth Circuit admonished that, "[c]ases should

19  be decided on their merits whenever reasonably possible."  *Id.*  However, courts have recognized

20  that, "the mere existence of [Rule 55(b)] indicates that this preference, standing alone, is not

21  dispositive."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (internal quotation and citation omitted).  Here,

22  because Defendant has failed to continue his defense of this action despite repeated opportunities

23  provided by the Court, a decision on the merits is impracticable, and it is unfair to Plaintiff for the

24  Court to continue to prolong its case.  *Id.*  Therefore, this factor favors entry of default judgment.

25  **D.**    **Summary**

26        Taken together, the Court finds that Plaintiff has made a sufficient showing with respect to

27  each of the *Eitel* factors.  The Court therefore **GRANTS** Plaintiff's Motion and enters default

28

1  judgment against Defendant on each of Plaintiff's claims, with the exception of its claim for

2  inducement of copyright infringement.

3

4  **E.    Remedies**

5       In its Complaint, Plaintiff requests that the Court issue a permanent injunction against

6  Defendant, enter an order of impoundment pursuant to 17 U.S.C. § 503 impounding all infringing

7  copies of Plaintiff's works which are in Defendant's possession or control, and award it monetary

8  damages and its attorneys' fees and costs.  The Court shall evaluate each of Plaintiff's requests in

9  turn.

10            1.       Injunctive Relief

11       Plaintiff urges the Court to enter a permanent injunction against Defendant as proposed in

12  Paragraph 2 of the Prayer for Relief in its Complaint.  Specifically, Plaintiff seeks an order enjoining

13  Defendant, his agents, representatives, servants, employees, attorneys, successors and assigns, and

14  all others in active concert or participation with him, from reproducing, distributing, publicly

15  displaying or making any other infringing use or infringing distribution of audiovisual works,

16  photographs or other materials owned by or registered to Plaintiff.  (Compl. 9:23-10:2, Dkt. #1.)

17  Plaintiff contends a permanent injunction is necessary to stop Defendant from his continued

18  violation of Plaintiff's copyrighted works.  As discussed above, Plaintiff has shown it is entitled to

19  injunctive relief based on Defendant's violation of federal copyright law.

20       As Plaintiff has shown that it entitled to judgment on each of its claims, with the exception of

21  inducement of copyright infringement, the Federal Copyright Act authorizes the Court to grant

22  injunctive relief.  17 U.S.C. §502(a) (authorizing a court to grant injunctions "as it may deem

23  reasonable to prevent or restrain infringement of a copyright").  Based on the allegations and

24  evidence Plaintiff has presented, the Court finds that Plaintiff has shown that it is entitled to a

25  permanent injunction against Defendant.  Thus, the Court must determine the proper scope of such

26  an injunction.

27       Generally, an injunction must be narrowly tailored to remedy only the specific harms shown

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  by the plaintiffs, rather than to enjoin all possible breaches of the law.  *Price v. City of Stockton*, 390

2  F.3d 1105, 1117 (9th Cir. 2004); *see also Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998-1002

3  (N.D. Cal. 2006).  In this case, the Court has reviewed the language Plaintiff proposes be included in

4  the injunction and is satisfied that it is not over-broad and merely enjoins Defendant from engaging

5  in the offending conduct previously described in this Order.  The Court shall therefore issue a

6  permanent injunction consistent with the language set forth in Paragraph 2 of Plaintiff's Prayer for

7  Relief.

8         2.    Monetary Damages

9         Plaintiff also requests an award of monetary compensation in the form of statutory damages

10  under 17 U.S.C. §504(c)(1).  Plaintiff seeks $25,000 per work for Defendant's infringement of three

11  of its moving pictures[2] and $2,500 for each of 23 photographs, for a total of $132,500.[3]  Plaintiff also

12  seeks enhanced statutory damages under 17 U.S.C. §504(c)(2) for Defendant's alleged willful

13  infringement of Plaintiff's copyrights.  Plaintiff argues that enhanced damages are appropriate here

14  because Defendant provided false information when registering the nubian101.com domain name,

15  which it argues creates a rebuttable presumption that the infringement was willful.  Plaintiff also

16  argues that enhanced damages are appropriate because Defendant knew the works belonged to

17  someone else.

18         In an action for copyright infringement, the copyright owner is entitled to recover the actual

19  damages suffered as a result of the infringement, as well as the defendant's profits obtained as a

20  result of the infringement.  17 U.S.C. § 504(a)(1).  Alternatively, at the election of the plaintiff, the

21  Court may award statutory damages of no less than $750 and up to $30,000 per copyright

22  infringement.  *Id.* at § 504(c)(1).  Further, in a case where the copyright owner proves that

---

[2]The motion pictures are *Trespass, Folsom Prison,* and *Stud Farm.*  (Ruoff Decl. ¶5, Dkt. #58.)

[3]In its motion, Plaintiff refers to 24 photographs.  However, based on Plaintiff's calculation of damages and the information contained in Keith Ruoff's Declaration (Dkt. #58 ¶6), it appears that the correct number is 23.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   infringement was willful, the Court in its discretion may increase the award of statutory damages to

2   a sum of not more than $150,000.  *Id.* at § 504(c)(2).

3          A district court has wide discretion in determining the amount of statutory damages to be

4   awarded and should consider what is just in the particular case in light of the nature of the copyright,

5   the circumstances of the infringement, and other relevant circumstances.  *Los Angeles News Service*

6   *v. Reuters Television International, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998). The statutory damages

7   serve both compensatory and punitive purposes, so in order to effectuate the statutory policy of

8   discouraging infringement, recovery of them is permitted even absent evidence of the actual

9   damages suffered by the plaintiff or of the profits reaped by the defendant.  *Id.*

10         Here, as discussed above, Plaintiff has adequately pled a claim for copyright infringement,

11  and it is therefore entitled to damages under § 504.  As Plaintiff has established that Defendant

12  infringed the copyrights in 26 of its works, Plaintiff is entitled to a minimum of $19,500 and a

13  maximum of $780,000 in statutory damages under §504(c)(1).  Plaintiff seeks $132,500 ($25,000 for

14  each of three movies and $2,500 for each of 23 photographs), arguing that it has won numerous

15  awards for its work, including awards for Best Gay Video, Best Art Direction, Best

16  Cinematography, and Best Editing, and that it is recognized throughout the industry as one of the

17  highest quality producers of gay erotica.  (Pl.'s Mot. 4:24-5:4, Dkt. #57.)  Plaintiff also argues that

18  the experience, hard work and financial commitment behind its productions result in a product that

19  is markedly superior to the content of its competitors, that it strictly controls how its content is

20  distributed, and works hard to protect its brand in order to maintain the value of its products.  (Ruoff

21  Decl. ¶8-9, Dkt. #58.)  Finally, Plaintiff argues that its ability to sell DVDs and memberships to its

22  website is directly dependent upon its ability to control the distribution of its works; i.e., it cannot

23  sell its movies when they are otherwise available for free on the Internet.  *Id.* ¶10.

24         Having read and considered the declarations, pleadings, and exhibits in the present motion,

25  the Court finds that the requested damages could be considered reasonable based on Plaintiff's

26  arguments alone.  However, in determining the amount of damages, the Court must consider what is

27  just in this particular case not only on the nature of Plaintiff's copyrights, but also the circumstances

28

17

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   of the infringement and other relevant circumstances.  *Los Angeles News Service*, 149 F.3d at 996.

2   Although Defendant has in large part failed to defend himself in this action, he did provide a

3   responsive pleading that gives the Court some insight into the nature of the infringement.  In his

4   pleading, Defendant states that nubian101.com is a community social site that caters to a black adult

5   gay community in which members upload videos streamed from other sites and photos and videos

6   from its members.  (Dkt. #33.)  Because members upload content, Defendant states that it is

7   "basically impossible" to know every video and photo, but he immediately removed Plaintiff's

8   copyrighted materials when it requested that he do so.  *Id.*  As to revenue, Defendant states that any

9   funds generated through the site were used to pay for the server and bandwidth.  *Id.*  The Court notes

10  that Plaintiff does not dispute these statements.  Defendant also states that he attempted to work with

11  Plaintiff, but it wanted him to admit that he maliciously uploaded its movies, which he denies doing.

12  *Id.*

13          In calculating statutory damages, some courts have looked to estimates of actual damages.

14  *Microsoft Corp. v. Coppola*, 2007 WL 1520964, at *4 (N.D. Cal. 2007); *Sara Lee Corp. v. Bags of*

15  *New York, Inc.*, 36 F.Supp.2d 161, 170 (S.D.N.Y.1999).  Although Plaintiff has not presented an

16  estimate of actual damages, there is no indication that Defendant profited from his infringing

17  activity, and he immediately removed the materials when informed of their presence.  Thus, the

18  Court finds that the amount of damages Plaintiff requests is not warranted.  Further, the Court notes

19  that Defendant appeared pro se in this matter and states that he is on a limited budget.  (Dkt. #33.)

20  Based on these relevant circumstances, an award on the lower end of the scale would have the

21  desired deterrent effect for someone in Defendant's position.  Accordingly, the Court thinks it just to

22  award statutory damages in the amount of $1,500 per moving picture copyright infringed and $750

23  per photo trademark infringed, for a total of $21,750.  These damages, coupled with the permanent

24  injunction granted against Defendant, will adequately serve the purpose of deterrence.

25          Having determined the appropriate damages award under § 504, the Court must next

26  consider whether an enhanced damages award is appropriate.  Plaintiff argues that it has established

27  a rebuttable presumption that Defendant's infringement was committed willfully.  Specifically,

28

18

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Plaintiff argues that Defendant provided false information when registering the domain name for

2   nubian101.com, and that knowingly providing false information creates a rebuttable presumption of

3   willfulness under the Copyright Act.  Even if there were no presumption of willfulness, Plaintiff

4   argues that Defendant knew the works belonged to someone else, and he knew that they belonged to

5   Plaintiff since most of the photographs contained Plaintiff's trademark.

6        In a case where the copyright owner sustains the burden of proving, and the court finds, that

7   infringement was committed willfully, the court in its discretion may increase the award of statutory

8   damages to a sum of not more than $150,000" per violation.  17 U.S.C. §504(c)(2).  An infringement

9   is willful under the Copyright Act if the defendant had knowledge that his conduct was infringing, or

10  the defendant acted with reckless disregard for the copyright  holder's rights.  *Sega Entertainment v.*

11  *MAPHIA*, 948 F.Supp. 923, 936 (N.D. Cal. 1996); *see also Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d

12  996, 1010-11 (2d. Cir. 1995) (Knowledge of infringement may be constructive rather than actual;

13  that is, "it need not be proven directly but may be inferred from the defendant's conduct.").

14       Under 17 U.S.C. §504(c)(3)(A), "it shall be a rebuttable presumption that the infringement

15  was committed willfully for purposes of determining relief if the violator, or a person acting in

16  concert with the violator, knowingly provided or knowingly caused to be provided materially false

17  contact information to a domain name registrar, domain name registry, or other domain name

18  registration authority in registering, maintaining, or renewing a domain name used in connection

19  with the infringement."  In its Complaint, Plaintiff alleges that "Defendant obfuscated the true

20  identity of the ownership of the domain registration for nubian101.com by causing materially false

21  registration information to be provided to the publicly available domain name registry."  (Compl. ¶4,

22  Dkt. #1.)  Upon entry of default, all factual allegations within the complaint are accepted as true,

23  except those allegations relating to the amount of damages.  *Televideo Sys.*, 826 F.2d at 917-18.

24  Accordingly, Plaintiff has established a rebuttable presumption that Defendant's infringement was

25  committed willfully.

26       In its motion, Plaintiff asks the Court to treble the base damage award.  However, enhanced

27  damages are not mandatory and the Court retains its discretion to increase the award based on the

28

19

**UNITED STATES DISTRICT COURT**
For the Northern District of California

facts of the case. 17 U.S.C. §504(c)(2). As discussed above, the Court finds that this case merits a damages award on the lower end of the scale - there is no indication that Defendant profited from his infringing activity, he immediately removed the materials when informed of their presence, and he is on a limited budget. Further, although Plaintiff has established a rebuttable presumption that the infringement was willful, it appears from Defendant's limited response that he was not aware of the infringement and immediately removed the images when Plaintiff requested that he do so. Thus, given that this is a default judgment motion and the facts surrounding the infringement are somewhat in dispute, the Court finds that an enhanced award is not appropriate to further the interests of deterrence. The Supreme Court has held that the "statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952). Thus, it is appropriate that the Court use opportunities such as this to send a message of deterrence to would be infringers that, "it costs less to obey the copyright laws than to disobey them." *International Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659 (D.N. Ill. 1987), *affirmed* 855 F. 2d 375 (D.N. Ill. 1987). Considering all the circumstances, the Court finds that statutory damages of $21,750 accomplish these goals. Therefore, the Court, in exercising its discretion, concludes that an award of statutory damages in the amount of $21,750 is just.

       3.    <u>Attorneys' Fees and Costs</u>

In its Complaint, Plaintiff's Prayer for Relief includes a request that the Court order Defendant to pay both the costs of this action and the reasonable attorney's fees incurred by it in prosecuting this case. (Compl. 10:15-18, Dkt. #1.) However, Plaintiff's motion for default judgment does not seek any such fees and costs. Further, Plaintiff provided no documentation which would establish the amount of fees and costs to which it would be entitled, and Plaintiff's counsel did not raise the issue of fees and costs at the April 15, 2010 hearing. Accordingly, the Court finds that an award of fees and costs is not appropriate.

## IV. CONCLUSION

Based on the above analysis, the Court **GRANTS IN PART AND DENIES IN PART**

20

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   Plaintiff's Motion for Default Judgment as follows:

2       The Court **GRANTS** Plaintiff's request for default judgment as to all of its claims in the

3   Complaint, with the exception of Plaintiff's inducement of copyright infringement claim.

4       The Court **GRANTS** Plaintiff's request for injunctive relief and hereby enjoins and restrains

5   Defendant, his agents, representatives, servants, employees, attorneys, successors and assigns, and

6   all others in active concert or participation with him, from reproducing, distributing, publicly

7   displaying or making any other infringing use or infringing distribution of audiovisual works,

8   photographs or other materials owned by or registered to Plaintiff.

9       The Court **GRANTS** Plaintiff's request for statutory damages in the amount of $21,750

10  pursuant to 17 U.S.C. §504(c)(1). The Court **DENIES** Plaintiff's request for enhanced statutory

11  damages under 17 U.S.C. §504(c)(2).

12      **IT IS SO ORDERED.**

13

14  Dated: April 16, 2010

15  _____

16  Maria-Elena James
    Chief United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28